# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| LAMONT CHAPPELL, ET AL., <br> Plaintiffs, <br> v. <br> NATIONAL CITY CORPORATION, et al., <br> Defendants. | Case No. 15-cv-03855-BLF <br><br> **ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT** <br><br> [Re: ECF 33] |

Plaintiffs Lamont and Debra Chappell, both African American, bring suit alleging that Defendants National City Bank, National City Corporation (collectively, "National City" or the "Company"), PNC Mortgage, and PNC Bank, NA (collectively, "PNC") discriminated against them on the basis of their race in approving an application to refinance a pre-existing high interest home loan. Specifically, the Chappells claim that they were qualified to receive a more favorable loan than they received. Defendants dispute this contention, and argue that Plaintiffs allegations are exaggerated, wrong, and unfounded. Defendants also assert that Plaintiffs' claims are untimely.

Now before the Court is Defendants' unopposed motion for summary judgment on all claims. Mot., ECF 33. Nearly one month after Defendants filed their motion, Plaintiffs filed a statement indicating that neither they nor their counsel was aware that Defendants had filed a motion for summary judgment. ECF 36. In light of this statement and the supporting declaration, the Court granted Plaintiffs' request for an extension of time within which to file an opposition to Defendants' motion. ECF 38. Despite this, Plaintiffs failed to oppose Defendants' motion.[1]

---

[1] As of the time of writing, 20 days have elapsed since the modified deadline for Plaintiffs to oppose Defendants' motion.

The Court has considered Defendants' briefing and all of the admissible evidence. For the reasons discussed below, Defendants' motion is GRANTED.

## I. FACTS

Defendants present the following undisputed facts in support of their motion: In 1985, Lamont and Debra Chappell purchased a home located at 1355 James Court, in Morgan Hill, California. Ex. B to Delanoy Decl. ("Lamont Chappell Dep.") 7:11–23, 26:8–13, ECF 33-2. The Chappells financed about $300,000 of the $325,000 purchase price. *Id.* at 27:2–15. The interest rate on Plaintiff's loan was approximately 8 percent. *Id.* More than 12 years later, the Chappells took out a home equity line of credit in the amount of $200,000 to pay for school tuition for their children, landscaping, and renovations to their home. *Id.* at 27:19–28:19.

In 2003, the Chappells sought to consolidate the underlying mortgage and the home equity line of credit. *Id.* at 30:7–21. Through a referral, the Chappells connected with Kim Jowenlock, a broker at Broker One Mortgage. *Id.* at 31:22–32:22. The Chappells provided Mr. Jowenlock with some of the information he used to complete the paperwork for the refinance. *Id.* at 33:9–25. At least some of the information on the application was false. *Id.* at 48:20–49:14, 52:11–14; Ex. C to Delanoy Decl. ("Uniform Residential Loan Application"), ECF 33-2.

Plaintiffs were approved for a loan. The Note, dated June 12, 2013, was for $627,500, and was used to pay off the Chappells' existing mortgage and the home equity line of credit, with no cash out. Lamont Chappell Dep. 34:1–11, 35:17–36:2; Ex. D to Delanoy Decl. ("Note"), ECF 33-2. The lender, National City,[2] considered the loan a "jumbo" loan in light of the amount financed. Lamont Chappell Dep. 39:15–40:4. As a jumbo loan, the interest rate was slightly higher than interest rates on non-jumbo loans. *Id.* The interest rate on the loan was 5.75%. Note 1. The Chappells did not pay an origination fee, a discount fee, an appraisal fee, a credit report fee, a lenders inspection fee, a mortgage insurance application fee, or an assumption fee. Lamont Chappell Dep. 36:3–23. After a lender credit, the Chappells paid $752.15 to refinance the loan. *Id.* at 38:8–12.

---

[2] In 2009, National City merged with PNC Bank and PNC became the servicer of the loan. LaMont Chappell Dep. 61:14–22, 62:6–11.

When the Chappells signed the loan, they believed that the interest rate "was a little high." *Id.* at 60:12–15. Mr. Chappell thought it was possible that the rate was high because of his race given the history of redlining in African American communities. *Id.* at 60:16–24. Plaintiffs now assert claims for violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; and the Civil Rights Act ("CRA"), 42 U.S.C. § 1981 *et seq.*, stemming from this loan, and in particular, the interest rate. *See generally* Compl., ECF 1; Lamont Chappell Dep. 102:14–16. Plaintiffs also assert a claim for unjust enrichment. Compl. ¶¶105–08.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."

3

*City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Defendants seek summary judgment on all claims. Specifically, they argue that Plaintiffs' claims are barred as untimely. Defendants also state grounds upon which they contend each claim is deficient. Because the Court agrees that Plaintiffs' claims are untimely, the Court does not address the merits of Plaintiffs' claims.[3]

Claims under the FHA and ECOA must be brought within two years of the alleged violation to be timely.[4] 42 U.S.C. § 3613(a)(1)(A) (FHA); 15 U.S.C. § 1691e(f) (ECOA). Plaintiffs' CRA claim is governed by the state-law statute of limitations for personal-injury torts (two years in California), and thus, Plaintiffs' CRA claim is also subject to a two-year limitations period. *Wilson v. Garcia*, 471 U.S. 261 (1985); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005); Cal. Civ. Proc. Code § 335.1. Finally, California Civil Procedure Code § 339 (1) provides a two year statute of limitations for unjust enrichment claims.

The majority rule among district courts in this circuit is that claims like the Chappells' arise during the origination and consummation of the loan. *See Davenport v. Litton Loan Serv.,*

---

[3] Nevertheless, the Court notes that the evidence shows that the interest rate on the loan was reasonable. *See* Ex. I to Delanoy Decl. ("Freddie Mac 30-Year Fixed-Rate Mortgages Since 1971), ECF 33-3 (showing that the average rate for a conventional, conforming 30-year fixed rate mortgage in May 2003 was 5.48% and the annual average for 2003 was 5.84%). The Court takes judicial notice of this document. *See* Fed. R. Evid. 201(d); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1117, 1109 (N.D. Cal. 2003).

[4] The ECOA currently provides actions brought under that statute must be commenced within "5 years after the date of occurrence of the violation." 15 U.S.C. § 1691e(f). At the time of the 2003 loan origination, however, the ECOA contained a two-year limitations period. 15 U.S.C. § 1691e(f)(2010), *amended by* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, 124 Stat. 1376 (2010). Courts have held that Congress did not clearly manifest an intent for the longer limitations period enacted in July 2010 to apply retroactively, and, therefore, the two-year limitations period applies to claims that accrued before July 2010. *See, e.g.*, *Empire Bank v. Dumond,* No. 13–CV–0388, 2013 WL 6238605, at *3 (N.D. Okla. Dec. 3, 2013).

*LP*, 725 F. Supp. 2d 862, 875 (N.D. Cal. 2010) (concluding that the plaintiff's claim "hone[d] in on the origination and consummation of her loan"); *see also Hernandez v. Sutter W. Capital*, No. C 09–03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (holding that the act giving rise to ECOA and FHA claims was "the issuance of the unfavorable, discriminatory loans" because the alleged wrongful act was the issuance of the loans). As a result, the Chappells' claims arose no later than when they accepted the loan on June 12, 2003.

To be timely, Plaintiffs must have filed this action by June 11, 2005, which they did not, or be subject to some sort of equitable relief from the expiration of the limitations period. Here, Plaintiffs invoke three theories under which they allege their claims are timely: the "continuing violation" theory, equitable estoppel, and equitable tolling. Compl. ¶¶ 34–40. The Court addresses each in turn below.

### A. "Continuing Violation" Theory Does Not Apply

Many courts endorse a "continuing violation" theory to extend the limitations period in FHA and ECOA cases where the plaintiff alleges that an unlawful action was not an isolated incident and was instead part of a continuing practice. *See Davenport*, 725 F. Supp. 2d at 875 (citing *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 929–30 (N.D. Cal. 2008) as an example of such a case); *see also Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1062 (N.D. Cal. 2008) (characterizing a continuing, unlawful practice as "really just a series of discrete, individual FHA violations"). In their complaint, Plaintiffs seek to avail themselves of the continuing violation theory by summarily alleging that Defendants practiced unlawful loan policies and procedures at the time the loan was processed "and for continuing violations committed as part of the mortgage loan collection process." *See* Compl. ¶ 2. However, as Defendants correctly argue, the continuing violations theory is inapplicable on the record before the Court.

Here, the allegedly wrongful act was the issuance of the loan itself. That conduct simply did not occur again or otherwise continue, and the payments Plaintiffs made pursuant to the loans were effects of any violation, not new violations in their own right. *Hernandez*, 2010 WL 3385046, at *3; *Goodwin v. Executive Trustee Serv., LLC*, 680 F.Supp. 2d 1244, 1251 (D. Nev.

5

2010); *Davenport*, 725 F. Supp. 2d at 875 (noting that a claim that "hones in on the origination and consummation of" a loan does not provide a basis for adoption of a "continuing violation" approach to FHA and ECOA claims); *Lyons v. First Am. Title Ins. Co.*, No. C 09–4156, 2009 WL 5195866, at *4 (N.D. Cal. Dec.22, 2009) ("The fact that plaintiffs continue to pay premiums, based on the single refinancing act, constitutes only a continuing effect [not a continuing violation]."); *Cervantes v. Countrywide Home Loans, Inc.*, No. CV 09–517, 2009 WL 3157160, at *7 (D. Ariz. Sept. 24, 2009) ("[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation") (quoting *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1981)); *but see Taylor v. Accredited Home Lenders, Inc.,* 580 F.Supp.2d 1062, 1066 (S.D.Cal.2008) ("[E]ach mortgage statement that seeks inflated payments for the loan based upon discriminatory terms is another violation visited upon Plaintiff."). Allegations that relate only to the continuing effects of an earlier wrong are insufficient to invoke the continuing violations theory. *Schramm v. JP Morgan Chase Bank, N.A.*, No. LA CV09-9442, 2012 WL 12882882, at *5 (C.D. Cal. Aug. 16, 2012).

### B. Equitable Estoppel

Equitable estoppel, which the Ninth Circuit equates with fraudulent concealment, "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (citation and internal quotation marks omitted). "The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of fraudulent concealment.'" *Id.*; *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981). "Conduct or representations" by the defendant that tend to "lull the plaintiff into a false sense of security, can estop the defendant from raising the statute of limitations based upon the principle that no man may take advantage of his own wrong." *Atkins v. Union Pacific R. Co.*, 685 F.2d 1146, 1149 (9th Cir. 1982) (citations and alterations omitted).

Plaintiffs allege that the limitations period should be tolled because "Defendants knowingly and actively concealed the basis for Plaintiffs' claims by engaging in a scheme that

6

was, by its very nature and purposeful design, self-concealing." Compl. ¶ 35. The evidence, however, contradicts Plaintiffs' claims that they were unaware of any alleged discrimination. At his deposition, Mr. Chappell stated that he suspected his mortgage interest rate was discriminatorily high in 2003. Lamont Chappell Dep. 60:12–15. As such, Plaintiffs had the information necessary to file a complaint for lending discrimination or challenge the purported discrimination in some fashion but chose not to.

Perhaps more significant, Plaintiffs have not provided this Court with any evidence of "affirmative misconduct, bad faith, or fraud" on the part of Defendants. *See, e.g.*, *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit"); *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008 (9th Cir. 1986) ("In this circuit, [equitable] estoppel is traditionally available against a nongovernmental party who has made a *knowing false representation or concealment of material facts* to a party ignorant of the facts . . . ." (emphasis added)). The conclusory allegations that Defendants "affirmatively concealed disproportionately high loan costs and fees, such as interest rate increases, add-on fees and unjustified interest rate hikes," are insufficient and unsupported by the evidence. *See* Compl. ¶ 37.

For the foregoing reasons, the Court concludes that equitable estoppel is not warranted on the record before it.

### C. Equitable Tolling

Plaintiffs alternatively allege that equitable tolling applies to render their claims timely. Compl. ¶ 38, 40. Equitable tolling permits a plaintiff to avoid the bar of a statute of limitations when, notwithstanding all due diligence, the plaintiff cannot obtain necessary information to give him the ability to pursue the claim. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Lehman v. United States*, 154 F.3d 1010, 1016 (1998) (citation and emphasis omitted). Equitable tolling generally applies when the plaintiff, by exercise of reasonable diligence, could not have discovered vital information bearing on the claim. *Id.*; *In re United Ins. Mgmt.*, *Inc.,* 14 F.3d 1380, 1386 (9th Cir. 1994). "One who fails to act diligently cannot invoke equitable

principles to excuse that lack of diligence." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Courts apply the equitable tolling doctrine sparingly. *Lehman*, 154 F.3d at 1016.

Here, Defendants provide evidence showing that Plaintiffs were not diligent in pursuing their claims, and thus, Defendants argue the Chappells are not entitled to equitable tolling. *See* Mot. 10–11. As discussed above, the evidence shows that Plaintiffs suspected that their interest rate was discriminatorily high in 2003. Nevertheless, Plaintiffs did not conduct any research into historic mortgage interest rates until 2016, Lamont Chappell Dep. 43:15–45:2; Ex. J to Delanoy Decl., ECF 33-3, more than a year after filing this lawsuit and 13 years after suspecting that the interest rate was discriminatory. Because the evidence shows a clear lack of diligence, Plaintiffs cannot rely on equitable tolling.

## IV. ORDER

Finding Plaintiffs' claims untimely, Defendants' motion for summary judgment is hereby GRANTED.

Dated: July 11, 2017

BETH LABSON FREEMAN
United States District Judge

8